IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-40809
Summary Calendar
_____

WILLIAM HARRIS PALMER,

Petitioner - Appellant

v.

GARY L JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION

Respondent - Appellee

_____

Appeal from the United States District Court
for the Eastern District of Texas
(6:95-CV-859)
_____
October 8, 1997

Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

William Harris Palmer, a Texas prisoner (#410634), appeals
the district court's order denying his petition for writ of
habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons that
follow, we affirm the judgment of the district court.


I. BACKGROUND

_____

[*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

A jury convicted Palmer of sexual assault and sentenced him to twenty years of imprisonment and a $10,000 fine. The Texas Eleventh District Court of Appeals affirmed his conviction. The Texas Court of Criminal Appeals denied Palmer's petition for discretionary review.

Palmer was released on parole on March 2, 1992. Just over one year later, while still on parole, Palmer was charged with aggravated assault for allegedly injuring Terry M. Strout with a knife. Although the case against Palmer was later dismissed because Strout could not be located to testify, Palmer was arrested and charged with violating Rule 2 and Rule 5 of his parole. Rule 2 requires the parolee to "[o]bey all municipal, county, state and federal laws," and Rule 5 prohibits the parolee from, inter alia, "us[ing], attempt[ing] or threaten[ing] to use any tool, implement or object to cause or threaten to cause any bodily injury."

Palmer signed a document acknowledging his rights in the parole revocation process and requesting a preliminary hearing. A preliminary hearing was held on September 1, 1993, to determine whether adequate grounds existed to find that Palmer violated the conditions of his release. The report of the preliminary hearing stated that Palmer was read his rights and voiced an understanding of those rights. The report also noted that the felony charge of aggravated assault had been dismissed because the district attorney's office could not locate Strout, who also

2

was in violation of his parole. Nevertheless, based on the complaint filed by Strout and on Palmer's testimony that he slapped Strout during a verbal altercation, the hearing officer determined that there was probable cause to believe that Palmer had violated Rules 2 and 5 of his parole. According to the complaint, Palmer intentionally and knowingly injured Strout by using a knife. The officer acknowledged that Palmer denied pulling a knife.

Palmer requested a revocation hearing, which was held on October 12, 1993. Again, Palmer was read his rights and voiced his understanding of those rights. Palmer waived his right to be represented at the hearing by an attorney. Two police officers testified that Strout had identified Palmer as his assailant and that a knife was recovered from Palmer's pocket. Palmer testified that Strout had cut himself on a fence and threatened to cut Palmer with a knife, hence Palmer struck him. Based on the testimony of the police officers and of Palmer, the hearing officer concluded by a preponderance of the evidence that Palmer had violated Rules 2 and 5. Palmer's parole was revoked on October 6, 1993.

Palmer subsequently filed two state applications for writ of habeas corpus. Both were denied without written order. Palmer then filed the instant federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that (1) the state could not revoke his good-time credits without providing monetary

3

compensation, (2) the state's custody of him was unlawful because his flat-time and good-time credits amounted to more than his underlying sentence, and (3) the state violated his due process and equal protection rights and his right against cruel and unusual punishment by returning him to prison without a new conviction after revoking his parole.

The respondent filed a motion to dismiss Palmer's federal habeas petition on the ground that he had not exhausted his state court remedies. While acknowledging that Palmer had exhausted his state remedies with respect to the second and third claims, respondent argued that Palmer had not exhausted his remedies with respect to his claim that the state could not deprive him of good-time credits without providing monetary compensation. The magistrate judge determined that it was appropriate to address the merits of the case notwithstanding the lack of complete exhaustion, and issued a report and recommendation that Palmer's habeas petition be denied.

Palmer filed objections to the magistrate judge's report and recommendation. In his objections, Palmer challenged for the first time the use of hearsay testimony at his revocation hearing and the procedure used throughout the revocation process. The district court, after considering the report and recommendation of the magistrate judge and conducting a de novo review of Palmer's objections thereto, adopted the findings and conclusions

4

of the magistrate judge and dismissed Palmer's petition with prejudice.

Palmer timely filed a notice of appeal as well as a motion for leave to proceed in forma pauperis ("IFP") on appeal. The district court granted Palmer a certificate of probable cause ("CPC") to appeal and stated that Palmer was entitled to proceed IFP. This court later granted Palmer a certificate of appealability ("COA") as to all issues.

## II. DISCUSSION

Because Palmer filed the instant federal habeas petition prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the standards of review set forth in AEDPA do not apply. Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997); Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997). Accordingly, we apply pre-AEDPA habeas law to Palmer's claims. See Green, 116 F.3d at 1120. We may consider Palmer's application for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (pre-AEDPA).[1]

---

[1] Under pre-AEDPA habeas law, the factual determinations of a state court in a habeas proceeding "evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct," unless one of eight enumerated exceptions applies. 28 U.S.C. § 2254(d) (pre-AEDPA). In this case the state courts denied Palmer's petitions without

5

Generally, issues raised for the first time in objections to a magistrate judge's report are not properly before the district court and therefore are not cognizable on appeal. Cupit v. Whitley, 28 F.3d 532, 535 n.5 (5th Cir. 1994), cert. denied, 513 U.S. 1163 (1995). However, it is well established that failure to exhaust state remedies is not an absolute bar to appellate review of a habeas petition. Granberry v. Greer, 481 U.S. 129, 131 (1987). In some instances, the interests of judicial economy support the exercise of appellate jurisdiction notwithstanding the lack of complete exhaustion. Id. at 135. In addition, this court has held that a district court may construe an issue raised for the first time in an objection to a magistrate judge's report and recommendation as a motion to amend a complaint. United States v. Riascos, 76 F.3d 93, 94 (5th Cir. 1996) (reviewing the district court's ruling on a motion for postconviction relief pursuant to 28 U.S.C. § 2255). In this case, the district court apparently considered the merits of Palmer's nonexhausted claims and concluded that they should be dismissed. We likewise conclude that Palmer's claims are without merit and that ordering Palmer to exhaust his state remedies would needlessly prolong this litigation. See Granberry, 481 U.S. at 133 ("[I]f the court of appeals is convinced that the petition has no merit, a belated

_____

written order, so there are no determinations to which we apply the presumption of correctness.

6

application of the exhaustion rule might simply require useless litigation in the state courts.").

Palmer asserts on appeal that he was denied due process in connection with his parole revocation.[2]  Specifically, Palmer complains that he did not receive notice of the charges upon which his revocation was based, that he did not receive a proper preliminary hearing, that the revocation hearing was conducted by a "designee" rather than a panel of three members of the parole board without his consent, that he was not provided with a written summary of the evidence and arguments supporting revocation, and that his revocation was based solely upon the hearsay testimony of the two police officers.

In the context of parole revocation, the Due Process Clause requires that a preliminary hearing be held "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions."  Morrissey v. Brewer, 408 U.S. 471, 485 (1972).  With respect to the preliminary hearing,

> the parolee should be given notice that the hearing
> will take place and that its purpose is to determine
> whether there is probable cause to believe he has

---

[2]  Palmer also argues on appeal that (1) his incarceration without a criminal conviction is a violation of the Thirteenth Amendment's prohibition against involuntary servitude, (2) the state's failure to restore his good-time credits denied him equal protection of the laws, and (3) that the state's action in revoking his parole invaded the judicial sphere in violation of the doctrine of separation of powers.  These claims are without merit.

committed a parole violation.  The notice should state what parole violations have been alleged.  At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer.  On request of the parolee, a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence.

Id. at 487.  The hearing officer is thereafter required to make a summary of the evidence presented at the hearing and determine whether there is probable cause to hold the parolee for a final decision on revocation.  Id.

With respect to the revocation hearing itself, the minimum procedural due process requirements include:

(a) written notice of the claimed violations of parole; (b) disclosure to the parole of evidence against him; (c) opportunity to be heard  in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 489.  The Court emphasized that a revocation hearing is not to be equated with a criminal prosecution, stating that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."  Id.

Our review of the record leads us to conclude that Palmer was accorded due process in connection with his parole

8

revocation.  First, the record indicates that Palmer received written notice of the alleged parole violations.  Second, the record contains documentation that a preliminary hearing was held and that such hearing comported with due process.  Third, Palmer himself acknowledges that under Texas law a revocation hearing may be conducted either by a panel of three members of the state parole board or by a single board employee known as a "designee." Palmer cites no authority, and we are aware of none, that a parolee must be afforded an opportunity to choose whether his revocation hearing be conducted by a "designee" or a three-member panel.  Further, we note that Palmer did not challenge the neutrality of the hearing officer at either the preliminary or the revocation hearing.  Fourth, the record contains a written report of the revocation hearing that includes a summary of the evidence upon which the decision to revoke Palmer's parole was based.

Finally, as to Palmer's contention that his parole was revoked solely on the basis of hearsay,[3] we note that the report of the revocation hearing indicates that significant nonhearsay evidence was also introduced at the hearing.  Palmer himself testified that he struck Strout, and the officers testified that

---

[3] To the extent that Palmer complains in this appeal that he was unlawfully imprisoned without a new criminal conviction, we note that this argument is without merit.  Conviction of a criminal charge is not a constitutional prerequisite to the revocation of parole.  See Amaya v. Beto, 424 F.2d 363, 364 (5th Cir. 1970).

a knife was recovered from Palmer's pocket.  In addition, Palmer made no objection at the hearing to the alleged hearsay testimony. This court has recognized that the use of hearsay in a parole revocation proceeding is problematic in the sense that it "prevents the parolee from confronting and cross-examining the declarant, and unreliable hearsay undermines the accuracy of the fact-finding process."  Farrish v. Mississippi St. Parole Bd., 836 F.2d 969, 978 (5th Cir. 1988).  Under the circumstances of this case, however, the alleged hearsay did not constitutionally impair the hearing.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.